**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3174-17T2

ANGELIQUE KIRKMAN,

    Appellant,

v.

BOARD OF REVIEW,
DEPARTMENT OF LABOR and
SPRINT/UNITED MANAGEMENT
COMPANY,

    Respondents.

_____

Submitted January 14, 2019 – Decided February 8, 2019

Before Judges Fasciale and Rose.

On appeal from the Board of Review, Department of Labor and Workforce Development, Docket No. 110,411.

Angelique Kirkman, appellant pro se.

Gurbir S. Grewal, Attorney General, attorney for respondent Board of Review (Melissa Dutton Schaffer, Assistant Attorney General, of counsel; Aaron J. Creuz, Deputy Attorney General, on the brief).

Respondent Sprint/United Management Company has not filed a brief.

PER CURIAM

Angelique Kirkman appeals from a final determination by the New Jersey Department of Labor and Workforce Development (DOLWD), Board of Review (Board), disqualifying her from receiving unemployment benefits pursuant to N.J.S.A. 43:21-5(b), because she was terminated by her employer, Sprint/United Management Company (Sprint), for "severe misconduct connected with the work."  We affirm.

We glean the salient facts and procedural history from the record before the Board.  Kirkman was employed by Sprint from August 2016 until January 5, 2017, when she was terminated for violating Sprint's time and attendance policy. Kirkman filed a claim for unemployment benefits on January 1, 2017.  The Division of Unemployment and Disability Insurance denied her application on the ground that Kirkman was discharged for "severe misconduct connected with the work."

On February 1, 2017, Kirkman filed an appeal.  On April 12, 2017, an Appeal Tribunal held a telephonic hearing, during which Kirkman and Rodrigo

Nunez, a market manager at Sprint and Kirkman's former supervisor, testified.[1] Following the hearing, the Appeal Tribunal reversed the Division's decision, finding "no evidence of wanton or willful misconduct, and [as such] no disqualification ar[ose] under N.J.S.A. 43:21-5(b)." Sprint timely appealed from that decision and on June 5, 2017, the Board reversed the Appeal Tribunal's decision and imposed a refund.

Apparently, the Board's decision was not sent to Kirkman's then current address. Because she was unable to participate in the October 13, 2017 hearing challenging the refund, the Appeal Tribunal postponed the hearing without prejudice.

On December 18, 2017, the Board reopened the matter, "set aside its prior decision, and reviewed the matter on the record below." Although the Board offered Kirkman an opportunity to respond to her employer's appeal, she "did not offer anything on appeal to the Board . . . to cause the Board . . . to change its legal conclusion."

---

[1] A witness on behalf of Kirkman was also present at the telephonic hearing, but did not testify.

In its de novo review, the Board adopted the Appeal Tribunal's findings of fact, which summarized the testimony from the April 12, 2017 hearing as follows:

> In November 2016, [Kirkman] was issued a written warning for her tardiness[. S]he explained that she was constantly late due to personal circumstances. She had just relocated to New York, and it was a very lengthy commute to New Jersey. As a result of her situation, the employer changed her work schedule from a 10[ a.m.] arrival to an 11[ a.m.] arrival. [Kirkman] was issued a final warning indicting that she needed to report to work timely. [Kirkman] also requested a transfer, but she later discovered that management had not submitted her request.
>
> During the week of 12/15/2016, [Kirkman] was late each day that she was scheduled to work which totaled approximately an hour. She notified her manager through text message that she was late, not [sic] she was subsequently terminated for chronic lateness.

However, the Board again disagreed with the Appeal Tribunal's April 12, 2017 decision that Kirkman's chronic tardiness was justifiable in light of her hour-long commute to work after she relocated. In particular, the Board found Sprint accommodated Kirkman by adjusting her hours, but Kirkman continued to arrive late. Further, her tardiness continued after receiving written reprimands. Accordingly, the Board reversed the Appeal Tribunal's decision and affirmed its own prior decision. This appeal followed.

4

On appeal, Kirkman argues her lateness was not "a wanton and willful act of disregard of [Sprint's] interest, nor a deliberate violation of [its] rules." Rather, she contends she acted with "good intent" by seeking a transfer to a location closer to her residence, and by recommending that Sprint hire another worker at her location. Kirkman also claims Sprint failed to pay her work hours; always called her supervisor when she was late; and, for the first time on appeal, she contends she never received a company handbook setting forth Sprint's attendance policies. In her reply brief, Kirkman claims the Board did not acknowledge "the relocation was due to an emergency."[2]

Our scope of review of an agency decision is limited. In re Stallworth, 208 N.J. 182, 194 (2011) (citing Henry v. Rahway State Prison, 81 N.J. 571, 579 (1980)). In challenging an agency conclusion, the claimant carries a substantial burden of persuasion, and the determination of the administrative agency carries a presumption of correctness. Gloucester Cty. Welfare Bd. v. N.J. Civil Serv.

---

[2]   Kirkman also raises issues in her reply brief, such as, she did not have a set schedule, that were not raised in her merits brief. An issue that is not addressed in a party's initial merits brief is deemed to be waived. See Drinker Biddle & Reath LLP v. N.J. Dept. of Law & Pub. Safety, 421 N.J. Super. 489, 496 n.5 (App. Div. 2011). It is improper for a party to use a reply brief to raise an issue for the first time or enlarge the main argument. See State v. Smith, 55 N.J. 476, 488 (1970); L.J. Zucca, Inc. v. Allen Bros. Wholesale Distribs. Inc., 434 N.J. Super. 60, 87 (App. Div. 2014).

Comm'n, 93 N.J. 384, 390-91 (1983); McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 563 (App. Div. 2002). We also accord substantial deference to the agency's interpretation of a statute it is charged with enforcing. Bd. of Educ. of Neptune v. Neptune Twp. Educ. Ass'n, 144 N.J. 16, 31 (1996).

Further, "[w]e are obliged to defer to the Board [of Review] when its factual findings are based on sufficient credible evidence in the record." Lourdes Med. Ctr. of Burlington Cty. v. Bd. of Review, 197 N.J. 339, 367 (2009) (internal quotation marks omitted). We overturn an agency determination only if it is arbitrary, capricious, unreasonable, unsupported by substantial credible evidence as a whole, or inconsistent with the enabling statute or legislative policy. Brady v. Bd. of Review, 152 N.J. 197, 210-11 (1997).

The Unemployment Compensation Law, N.J.S.A. 43:21-1 to -71, expresses the legislative intent that benefits be paid only to those who have become unemployed through no fault of their own, and the Board is obligated to preserve the fund "against claims by those not intended to share in its benefits." Brady, 152 N.J. at 212 (quoting Yardville Supply Co. v. Bd. of Review, 114 N.J. 371, 374 (1989)). Therefore, the statute sets forth penalties for individuals who have been discharged for misconduct, with the degree of

6

penalty varying according to the level of misconduct. See Silver v. Bd. of Review, 430 N.J. Super. 44, 54 (App. Div. 2013).

N.J.S.A. 43:21-5 governs disqualification for unemployment benefits. Under the version of the statute in effect at the time of Kirkman's disqualification,[3] subsection (b) of the statute provided examples of "severe misconduct connected with the work." Pertinent to this appeal, "repeated lateness . . . after a written warning by an employer" was a specific example of severe misconduct under N.J.S.A. 43:21-5(b).

Pursuant to regulation, severe misconduct was defined as "an act which (1) constitutes 'simple misconduct,' as that term is defined in this section; (2) is both deliberate and malicious; and (3) is not 'gross misconduct.'" N.J.A.C. 12:17-2.1.[4] In Silver, we construed severe misconduct based on repeated

---

[3] We recognize N.J.S.A. 43:21-5(b) was amended on August 24, 2018, eliminating "severe misconduct." However, because Kirkman applied for unemployment benefits before the 2018 amendment was enacted, and the Legislature was silent as to retroactivity, the former version of N.J.S.A. 43:21-5(b) applies here. See Maeker v. Ross, 219 N.J. 565, 581 (2014) (recognizing the Legislature must clearly intend for a statute to be applied retroactively).

[4] In May 2017, we invalidated the DOLWD's definition of "simple misconduct" as arbitrary and capricious without prejudice to the agency's adoption of a substitute regulation in conformance with the regulatory scheme. In re N.J.A.C. 12:17:2.1, 450 N.J. Super. 152 (App. Div. 2017). Kirkman applied for unemployment benefits before our decision was issued and, as noted above, before N.J.S.A. 43:21-5(b) was amended.

lateness or absences after a written warning "as requiring acts done intentionally, deliberately, and with malice." 430 N.J. Super. at 55. Further, we understood "'intentional' and 'malicious' as used in the regulation to include deliberate disregard of the employer's rules or policies, or deliberate disregard of the standards of behavior that the employer has the right to expect of an employee." Id. at 56.

Kirkman's claims lack merit. For example, we have held that excusable absences, such as family emergencies, "do not constitute 'deliberate violation[s] of the employer's rules, . . . or . . . an intentional and substantial disregard . . . of the employee's duties and obligations to the employer[,]'" and therefore do not constitute even simple misconduct. Parks v. Bd. of Review, 405 N.J. Super. 252, 256 (App. Div. 2009) (first three alterations in original) (quoting Beaunit Mills, Inc. v. Bd. of Review, 43 N.J. Super. 172, 183 (App. Div. 1956)). However, this case is not similar to Parks, where we found all of the absences were due to family emergencies. Ibid. Rather, the Board was entitled to infer from Kirkman's repeated absences, especially after she had been issued written warnings, that she was deliberately indifferent to her employer's policies.

Given our deferential standard of review, we have no basis to interfere with the Board's determination to disqualify Kirkman from unemployment

benefits for "severe misconduct connected with [her] work" based on her pattern of excessive tardiness. During her six-month employment, Sprint accommodated Kirkman's relocation by adjusting her hours. Nonetheless, Kirkman repeatedly arrived late to work. Further, as noted, Kirkman twice received written notice of her chronic tardiness, but continued her late arrivals.

Because Kirkman committed those violations repeatedly, despite her employer's warnings, her actions rose to the level of severe misconduct under the statute. Silver, 430 N.J. Super. at 55-56. We therefore conclude, based on our review of the record, that the Board properly characterized Kirkman's chronic lateness as severe misconduct and disqualified her from benefits. N.J.S.A. 43:21-5(b).

To the extent not otherwise addressed, Kirkman's remaining arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3174-17T2